# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 28, 2012

Lyle W. Cayce
Clerk

No. 10-60986

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

DAMION LUNDY,

Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Mississippi

Before DeMOSS, CLEMENT, and ELROD Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

Damion Lundy was convicted of the use of facilities of interstate commerce to attempt to persuade, induce, and entice a minor female to engage in illegal sexual activity. After prolonged texting and phone calls with a girl who Lundy thought to be 15—but who was actually an undercover police officer—the two agreed to meet to have sex. Lundy was arrested at the meet-up location while talking on the phone with the officer/purported 15 year old and convicted by a jury. He appeals on various grounds. We AFFIRM.

No. 10-60986

## FACTS AND PROCEEDINGS

In August 2006, Lundy was a 23 year old attending Delta State College in Cleveland, Mississippi and residing in Hollandale, Mississippi. Using the name 'Jarious Johnson',[1] Lundy made contact with and engaged in a string of sexually laced text message and phone conversations with a girl he thought to be 15 year old "Madison Scruggs" but who in actuality was undercover Deputy Sheriff Joseph Giroux of the Lee County Sheriff's Department.

Lundy and Madison engaged in multiple conversations over the course of a week, including a phone conversation in which Lundy spoke to a female friend of Giroux's who posed as Madison. Lundy and Madison agreed to meet at the Cracker Barrel near Tupelo, Mississippi and then travel to her house to have sex. On the night of the meeting, Lundy arrived at the parking lot while having a phone conversation with the woman he believed to be Madison. He was arrested and charged with violation of 18 U.S.C. § 2422(b) for:

> knowingly us[ing] facilities in interstate commerce, that is, Yahoo Internet messaging and cellular telephone conversations and text messaging, to attempt to persuade, induce and entice a 15-year-old minor to engage in sexual activity with him which could constitute the crime of statutory rape for which DAMION LUNDY, a/k/a "damionlundy," could be prosecuted under the law of the State of Mississippi.

After the first trial resulted in a hung jury, Lundy was convicted following the second trial. He put forth no evidence at the second trial. He now appeals his conviction arguing: 1) insufficiency of the evidence; 2) the trial judge committed reversible error because the jury instruction constructively amended the indictment; 3) the trial judge's preclusion of Lundy's expert as a sanction for failure to comply with discovery was reversible error; 4) the admission of the texts and chats were done without adequate foundation or authentication and

---

[1] Lundy disputes that Jarious Johnson is in fact him, but the jury rejected this argument.

No. 10-60986

thus constitute reversible error; and 5) the trial judge admitted hearsay testimony that constitutes reversible error

## DISCUSSION

### 1. Sufficiency of the Evidence

This court reviews a district court's denial of a motion for judgment of acquittal de novo. *United States v. Restrepo*, 994 F.2d 173, 182 (5th Cir. 1993). "The well-established standard in this circuit for reviewing a conviction allegedly based on insufficient evidence is whether a reasonable jury could find that the evidence establishes the guilt of the defendant beyond a reasonable doubt." *Id.* (quoting *United States v. Sanchez*, 961 F.2d 1169, 1173 (5th Cir. 1992)). In addition, "[t]he evidence is viewed in the light most favorable to the verdict, accepting all credibility choices and reasonable inferences made by the trier of fact which tend to support the verdict." *United States v. Asibor,* 109 F.3d 1023, 1030 (5th Cir. 1997). The court's inquiry is "limited to whether the jury's verdict was reasonable, not whether we believe it to be correct." *United States v. Williams*, 264 F.3d 561, 576 (5th Cir. 2001). Finally, "[i]t is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt," *United States v. Lage*, 183 F.3d 374, 382 (5th Cir. 1999), and any conflict in the evidence must be resolved in favor of the jury's verdict. *United States v. Duncan*, 919 F.2d 981, 990 (5th Cir. 1990).

Lundy argues that there was insufficient evidence because: a) the government failed to prove that he could have been charged with statutory rape under Mississippi law had he been able to have sex with Madison, b) the government did not prove the inducement or enticement element of the offense, and c) the government failed to prove that Lundy knew that Madison was only 15.

*a) Did the Government fail to prove the Charged Offense?*

No. 10-60986

Lundy argues that the government failed to prove the charged offense because the law requires that the sexual activity he attempted to engage in with Madison could have resulted in a charge of statutory rape. He argues that a charge of statutory rape is impossible because Madison was a 'faux person'—an adult posing as a child—and therefore it could not have resulted in a charge of statutory rape since the person in question was not within the statutory age for the offense.[2] He argues that under Mississippi law, if someone tries but does not succeed in having sex with a 'faux child', the crime is attempted statutory rape which is an offense under Miss. Code Ann. §97-1-7. This is different than the indictment that charges him with a federal crime "which would constitute the crime of statutory rape, for which [he] could be prosecuted under the laws of the State of Mississippi (Mississippi Code Annotated § 97-3-65(a)) all in violation of Title 18, United States Code, Section 2422(b)."

Lundy's argument is an incorrect interpretation of the law he was charged with and an incorrect understanding of the factual impossibility defense. He is charged with a federal crime of attempting to engage in the illegal sexual activity of statutory rape under Mississippi law. As the government argues in its brief, "[t]he indictment does not charge Lundy with Mississippi statutory rape, but with attempting to get a minor to engage in activity, which if accomplished, would constitute statutory rape under Mississippi law."

This court has repeatedly held that factual impossibility to complete a criminal act does not preclude a conviction for attempting to break the law.[3] Hence, Lundy's argument that he could not have committed statutory rape with

---

[2] Under Mississippi law, statutory rape is defined as "sexual intercourse with a child . . . who is at least fourteen(14) but under (16) years of age." § 97-3-65(a)

[3] This court has previously defined factual impossibility as a very rare occurrence that happens "when the actions which the defendant performs or sets in motion, even if fully carried out *as he desires*, would not constitute a crime." *United States v. Farner*, 251 F.3d 510, 513 (5th Cir. 2001)(quoting *United States v. Oviedo*, 525 F.2d 881, 883 (5th Cir. 1976)) (emphasis in original).

No. 10-60986

a 'faux child' does not stop him from being charged with attempting to break the statutory law, if the facts had been as he thought they were. "Factual impossibility is not a defense if the crime could have been committed had the attendant circumstances been as the actor believed them to be." *Farner*, 251 F.3d at 512.

The *Farner* court clearly explained the factual impossibility defense in this circuit. *Farner* dealt with a defendant who was charged with attempting to persuade and entice a minor to engage in criminal activity, but where, like here, the minor was in actuality an undercover officer. The court wrote:

> Farner says this is a case of legal impossibility because Kathy Crawford [an FBI agent] was an adult, and the statute does not address attempted sexual activity between adults. On the other hand, the district court viewed the impossibility as factual, because the defendant unquestionably intended to engage in the conduct proscribed by law but failed only because of circumstances unknown to him. . . .
>
> In any event, this circuit has properly eschewed the semantical thicket of the impossibility defense in criminal attempt cases and has instead required proof of two elements: first, that the defendant acted with the kind of culpability otherwise required for the commission of the underlying substantive offense, and, second, that the defendant had engaged in conduct which constitutes a substantial step toward commission of the crime. The substantial step must be conduct which strongly corroborates the firmness of defendant's criminal attempt. The Model Penal Code endorses this approach. *See* Model Penal Code § 5.01 (1985). In this case, the district court correctly concluded from the stipulated evidence, beyond a reasonable doubt, that Farner intended to engage in sexual acts with a 14-year-old girl and that he took substantial steps toward committing the crime.

*Id.* at 512-13 (citations omitted).

Here, the government introduced evidence that Lundy believed Madison was within the statutory rape age range of fourteen to sixteen years old. If

5

believed by the jury, this evidence would indicate the "culpability otherwise required for the commission of the underlying substantive offense" *Id.* at 513. Lundy also showed up at the location of the meeting with Madison which indicates a substantial step towards completion of the crime. Therefore, under this circuit's precedent, the government introduced sufficient evidence to prove the charged offense in the indictment.

*b. Was the evidence sufficient to show persuasion, inducement or enticement?*

Lundy argues that the government failed to prove this part of the crime and essentially argues that because Madison was willing, there was no enticement, inducement, or persuasion involved. He argues that the government "had to show that Lundy did something more than just ask Madison if she wanted to have sex . . . [and] he had to move her from an unwillingness to have sex with him to a willingness to do."

Whether there was inducement, persuasion, or enticement is a question of fact for the jury to decide. All this court must decide is whether or not enough evidence was presented for a reasonable jury to come to the conclusion that there was some form of inducement. This court has previously upheld similar convictions with similar fact patterns. *See United States v. Barlow*, 568 F.3d 215, 219-20 (5th Cir. 2009) (finding that the defendant had taken a substantial step when over the course of months he engaged in sexual laced conversations, drove to the meeting location, and then left early); *United States v. Van Velkinburgh*, 342 F. App'x 939, 941 (5th Cir. 2009) (upholding a similar charge to Lundy's against an insufficient evidence claim where defendant engaged in sexually charged instant messages and text messaging with a minor and drove to the agreed upon location). Lundy's arguments regarding the lack of inducement required to convince Madison to have sex are unpersuasive in light of this court's

prior cases.  The government introduced evidence similar to these cases and we hold that such evidence meets the threshold for sufficiency of the evidence.

*c. Was the evidence sufficient to prove that Lundy knew Madison was 15?*

Lundy argues that there was insufficient evidence that he knew Madison was 15 by arguing that the chats in question do not clearly indicate that he was the one typing the sexually laced messages to Madison. There is no indication that if the jury believed Lundy was the author of the chats, there was insufficient evidence of Madison's age.  Madison wrote "u kewl dat im 15 " to which Lundy responded, "Yeah." He also wrote "u look older than 15." Both indicate that if the person on the chat was Lundy, a question for the jury, there was sufficient evidence introduced of Madison's age to uphold the verdict.

## 2. *Jury Instruction*

On appeal, Lundy claims that the district court's jury instruction was improper for essentially the same reasons as Lundy's sufficiency of the evidence argument regarding factual impossibility. He reads the jury instruction to include an offense he claims is a factual impossibility—attempted statutory rape under Mississippi law. "Plainly, the instruction allowed a conviction if Lundy could have been charged under Mississippi law with attempted statutory rape (97-7-1) [sic]  although the indictment stated he could be charged with statutory rape (97-3-65(a))."

This argument fails for the same reasons as his factual impossibility argument. Lundy was charged with the federal crime of attempting to persuade, induce and entice a minor to engage in sexual activity, which would constitute statutory rape in Mississippi, 18 U.S.C. § 2422(b) via Miss. Code Ann., § 97-3-65(a), not with attempted statutory rape under Miss. Code Ann., § 97-1-7. The jury instruction clearly references and summarizes this distinction and fits within the descriptions of the attempt crime as laid out under *Farner*. The instruction stated:

No. 10-60986

It is *not* necessary for the Government to prove that the individual was in fact less than 18 years of age; but *it* is necessary for the Government to prove the Defendant *believed* such individual to be under that age.

Also, it is *not* necessary for the Government to prove that the individual was actually persuaded or inducted or enticed to engage in sexual activity; but it *is* necessary for the Government to prove that the Defendant attempted to persuade, induce or entice a minor to engage in some form of unlawful sexual activity with the Defendant and knowingly and willfully took some action that was a substantial step toward bringing about or engaging in that sexual activity.

This instruction clearly lays out what the government must prove and is an accurate reflection of the relevant case law. As such, we reject Lundy's appeal on that issue.

### 3. *Exclusion of expert witness as a sanction for discovery violations*

The trial court excluded Lundy's expert, Mark Diabase, from testifying because of Lundy's failure to follow Federal Rule of Criminal Procedure 16(b)(1)(C), which requires the defendant to give the government a written summary of expert testimony prior to testifying. Lundy argues in his brief that excluding Diabase was a violation of his constitutional rights because "the compulsory process clause of the sixth amendment forbids the exclusion of otherwise admissible evidence solely as a sanction to enforce discovery rules or orders against criminal defendant." *United States v. Davis*, 639 F.2d 239, 243 (5th Cir. 1981). Lundy also cites *Taylor v. Illinois*, to support the proposition that sanctions, rather than preclusion, would be "adequate and appropriate in most cases." 484 U.S. 400, 413 (1988).

Although Lundy pinpoints the proper case law, he fails to fully grasp its effect. In *Taylor* for example, the Court stated:

It may well be true that alternative sanctions are adequate and appropriate in most cases, but it is equally clear that they would be

8

less effective than the preclusion sanction and that there are instances in which they would perpetuate rather than limit the prejudice to the State and the harm to the adversary process.

*Id.* Here, the trial court determined that preclusion of the testimony was an adequate and fair sanction and Lundy's arguments against that conclusion are unpersuasive.

First, he claims the sanction is harsh because his failure to abide by the rule was not willful. Then he argues that it would have been impossible to summarize Diabase's testimony prior to having cross-examined Giroux about the intricacies of his collection method for the chats. This argument is especially unpersuasive. Beside the fact that defendants around the country manage to meet their requirements under Federal Rule of Criminal Procedure 16(b)(1)(C), in Lundy's instance, the dereliction is particularly egregious and the excuse implausible due to the fact that Giroux testified nearly identically as he had in the first trial. Lundy should have known what Giroux was going to testify to because he had already testified.

Beside the implausibility of Lundy's excuses, there are other reasons that the judge may have thought excluding Diabase was proper. On review, these reasons look more like simple courtroom management than a sanction, although all of the reasons influenced the judge's decision.

First, the trial court inquired into why defense counsel was deficient in notifying the government about his intent to call Diabase. The court noted that defense counsel had first been in contact with Diabase "three to four days" prior to attempting to name him. The court also inquired as to when the defense had the information on which Diabase would be testifying. On questioning, the government indicated that information on which Diabase would testify was turned over on June 22, 2010—weeks before the trial date of July 12-14 and even that information was only a "re-identification of previous exhibits" and hence "an

No. 10-60986

inexcusable delay in designating an expert." Second, according to the district court and the government, it is unclear whether Diabase was qualified to testify on the issue for which Lundy intended to call him. He had never reviewed the chats in any form, had never requested the chat logs, and was purportedly an expert in "data recovery and internet connectivity" which had nothing to do with the authenticity or collection methods about which Giroux testified.

Lundy argues that the government knew that Diabase was prepared to testify, even without the formal Rule 16 summary, because the defense had requested Diabase be allowed to observe the trial to hear Giroux's testimony and Giroux even referenced him when he was being questioned by the court about another piece of evidence stating, "I don't work for Yahoo and neither does your expert." The district court found this argument unpersuasive.

Finally, the judge stated that he would have granted a continuance if the defense had requested it when the new information was presented on June 22, but could not do so after the third day of trial with a jury already empaneled.

As the Court in *Taylor* stated:

> [I]t is neither necessary nor appropriate for us to attempt to draft a comprehensive set of standards to guide the exercise of discretion in every possible case. It is elementary, of course, that a trial court may not ignore the fundamental character of the defendant's right to offer the testimony of witnesses in his favor. But the mere invocation of that right cannot automatically and invariably outweigh countervailing public interests. The integrity of the adversary process, which depends both on the presentation of reliable evidence and the rejection of unreliable evidence, the interest in the fair and efficient administration of justice, and the potential prejudice to the truth-determining function of the trial process must also weigh in the balance.

*Taylor*, 484 U.S. at 414-15. There is no indication that the district court abused its discretion, having found no good reason for the delay, found the testimony to be redundant, and without the defense clearly showing that Diabase was an

expert capable of offering such testimony. We reject the assertion that this is reversible error.

### 4. Authentication and Admission of Chats

Lundy argues that the chats between him and Madison, as well as a video which demonstrates how Giroux collected the chats (referred to as the Camtasia videos),[4] should not have been admitted because an inadequate foundation was laid. This court reviews evidentiary decisions for an abuse of discretion, and the burden is on the government to show by a preponderance of the evidence "that the pertinent admissibility requirements are met" and that the evidence is what it purports to be. *United States v. Jackson*, 636 F.3d 687, 695 (5th Cir. 2011) (rejecting the admission of notebooks where there was missing data, had out of place time sequences, and contained editorial information).

According to Lundy, Giroux was not qualified to operate the Camtasia software, he did not properly preserve the chats, and there is no clear indication that Lundy was "snicker2242002", the name used in the chats with Madison. For example, the chat conversations that Giroux had with the screen names "damionlundy" or "snicker2242002"[5] were preserved by Giroux cutting and pasting the chats into a Word document. Lundy argues that a screen shot would have been a better manner of capturing the chats because screen shots are more

---

[4] Camtasia is a program which lets you record in video form your actions on a computer. These are often used to demonstrate to someone how to complete a task on the computer they are unfamiliar with. For example, someone new to using Google might watch a video filmed with Camtasia which is a recording of someone else's computer screen, showing their mouse clicking on Internet Explorer, the browser opening, typing the name of the topic into Google, and then clicking on the link. This recording of the actual computer screen is recorded using Camtasia and can be edited and shown back in a video. In this instance, it was used to show how Giroux "archived the chats and how he used the archive to create the chat log that [the government] introduced into evidence that [the government] will introduce into evidence again."

[5] Lundy makes a number of allusions in his briefs to the possibility that Giroux doctored or inadvertently linked the screen name for "snicker2242002" with "damionlundy." The argument on how this might have occurred or how it goes to show that they are the same person isn't clearly described by either side.

difficult to alter. In addition, he argues that the Camtasia software is purposely used for editing video, so there is no proof that the video is what it purports to be. Finally, he claims the video should not have been admitted because it recorded a simulation of the chat conversation, recorded in 2010, rather than the conversation as it took place in 2006.

### a. Chat Conversations

With regard to the chat conversations, there is no clear precedent in this circuit indicating what may be used for authentication. The government points to cases outside of this circuit where a detective testifying that the transcripts were an accurate reflection of the chats was enough to authenticate. *See Porter v. United States*, No. 08-CV-1497, 2008 WL 5451011, at \*3 (E.D.N.Y. Dec. 31, 2008) (dismissing a claim that a Word copy of the chats was not properly authenticated). Lundy points to *Slattery v. United States*, No. 2:98CR125-B, 2005 WL 2416339, at \*7-8 (N.D. Miss. Sept. 30, 2005), where a court found the chat conversations were not reliable because there was evidence of modification. In *Slattery*, the person verifying the chats was also a government witness, but one who had a motive to change or alter the texts because it was suspected he was involved in the same pedofile scheme as the defendant in the case. *Id.* In this case, it is a stretch to compare the authentication provided by Giroux with the potential pedophile in *Slattery* and Giroux's testimony that the chats are as he recorded them is enough to meet the low threshold for authentication. After that, Giroux was subject to cross-examination on his biases and methodology and the jury rejected or discounted those biases or flaws by finding Lundy guilty. Lundy's arguments about authentication of the chats are therefore unavailing.

### b. Camtasia Videos

The Camtasia videos are also problematic according to Lundy, because they were not recorded at the time of the incident but in 2010 in preparation for trial. The defense and the trial judge, when viewing the videos outside the

No. 10-60986

presence of the jury, indicated a number of problems, many of which are echoed now by Lundy. The Yahoo software was different in 2006 versus 2010. In the video, Giroux types in a younger age into the account sign-up than he did in setting up the Madison account. This apparently could not be seen by Yahoo users, but it was in the video being shown to the jury, who may have mistakenly assumed that Lundy could have seen the young birth date in Madison's profile. To offset this, Giroux showed the judge a saved printed version of the 2006 profile so he could compare it to what was being demonstrated in the videos. Lundy's trial counsel cross-examined him about the information in Madison's profile and Giroux testified that it was the same in 2006 as in the video he created, although admitting there is more contained in the 2010 video profile. After weighing the arguments, the trial judge permitted the videos to be shown but ordered "any deviation from the 2006 procedure is going to have to be explained."

Given the wide discretion that a trial judge has in admitting evidence, Lundy fails to demonstrate an abuse of discretion by admitting the Camtasia videos. The record indicates that the court held a detailed discussion with the witness, viewed the videos, and subjected the witness to cross-examination by Lundy's counsel, outside of the scope of the jury, before finally admitting the evidence with the caveat that any differences between the 2006 and 2010 versions be explained to the jury. On appeal, Lundy highlights the same potential problems with the video and the process that he raised at trial. The judge heard them, then the jury heard them when Giroux was cross-examined, and ultimately the jury rejected them. The problems are not enough to undermine the low bar for authentication of evidence. The jury rejected them as implausible or irrelevant by convicting Lundy and implicitly accepting the veracity of Giroux's testimony regarding the chats. We see no reason to overrule the decision of the district court.

13

No. 10-60986

### c. Linking Lundy to the Chats and Texts

Finally, Lundy argues that there was inadequate authentication to prove that he was the one exchanging the text messages with Madison. He also argues that some of the conversations were missing, and that in reality, someone other than Lundy was in on the chats. While some of the texts and phone calls were placed on other phones, the fact that Lundy was on the phone talking with Madison when he was arrested is enough to meet the low burden for authentication. After that, it was up to the jury to decide whether or not they believed Lundy's story that another person borrowed his phone, that Lundy had blocked Madison's number from texting him, and that he had called her at Cracker Barrel to figure out who the 'random' person texting him was. Although these assertions strike us as implausible, that was up to the jury to decide.  The jury heard and rejected this convoluted story and Lundy should not be able to turn what is in reality a sufficiency of the evidence argument into a lack of proper authentication argument. Lundy also briefly alludes to a hearsay problem with the texts, but fails to adequately brief this argument, thus waiving the issue.

Overall, Lundy's argument that the evidence presented to the jury was not properly authenticated is unpersuasive.

### 5. Hearsay

Lundy objects to the testimony of Johnny Spand, an officer of the Hollandale Police Department, as hearsay. Lundy argues that Spand's testimony that there was no one named "Jarious Johnson" living in the Hollendale area and that Lundy had a girlfriend whose son was named D. Jarious were hearsay. Part of Lundy's defense at the first trial was that someone named Jarious Johnson had chatted with Madison and that he had no connection to that person. Jarious Johnson is the name that "snicker" gave in his online chat to identify himself. To foreclose this argument in the second trial, the government

14

No. 10-60986

requested Officer Spand investigate if Jarious Johnson existed. Spand testified that he had fourteen years of experience living in the area, had investigated the matter, including talking with locals and investigating school records, and in his investigation the only person that came close to having the name Jarious Johnson in the area was Lundy's girlfriend's son. Lundy claims this is hearsay.

Lundy's argument is unfounded. This court has previously held that "[o]ut-of-court statements offered for another purpose, e.g., providing background information to explain the actions of investigators, are not hearsay." *United States v. Dunigan*, 555 F.3d 501, 507 (5th Cir. 2009) (quoting *United States v. Johnston*, 127 F.3d 380, 394 (5th Cir. 1997)). Further, "[t]estimony describing an investigation's background should not be needlessly objected to on hearsay grounds where it goes only to how police investigated a crime rather than to the truth of the matter asserted." *Id.*

The examination of Spand at the second trial makes clear that he is testifying based on his investigation. Spand goes on to explain what his investigation entailed, including talking to three dozen people in the area from all walks of life. "Some is clerks, some may be preachers, young people kind of like hang around, older folks that go to church, whatever that been living there pretty much all their life." He then testified that the only name he found that was close to Jarious Johnson was someone by the name of D. Jarious, which is Lundy's girlfriend Tanisha's son. The testimony by Spand makes it clear that he was referencing the manner of his investigation and that his investigation uncovered no one by the name Jarious Johnson. He did not attempt to speak for others, or present their testimony as his own, but limited his statements to the course and results of his investigation. As such, the statements are not hearsay within the meaning of *Dunigan*, and we reject Lundy's arguments to the contrary.

15

No. 10-60986

## CONCLUSION

We conclude that all of Lundy's arguments are without merit and AFFIRM the conviction.