**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-1080
_____

UNITED STATES OF AMERICA


v.

SANNY CHIP,
                              Appellant


_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
No. 2:17-cr-00227-001
District Judge: Hon. Harvey Bartle, III
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
January 17, 2019
_____

Before: GREENAWAY, JR., SHWARTZ, and PORTER, Circuit Judges.

(Filed: January 29, 2019)
_____

OPINION*
_____

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

PORTER, Circuit Judge.

Federal law prohibits someone from persuading, inducing, enticing, or coercing a minor to engage in illegal sexual activity. Here, the appellant, Sanny Chip, and an undercover agent posing as a minor met on a smartphone app and exchanged sexually charged messages. Ultimately, they agreed to meet up to have sex. Chip was arrested at the scene of the planned encounter. A jury found him guilty and the District Court sentenced him to ten years in prison. On appeal, Chip argues that because the purported minor was a willing participant in the planned sexual encounter, he did not entice the minor and thus the evidence was insufficient to convict him.

Because a rational juror could consider the evidence sufficient to support Chip's guilt beyond a reasonable doubt, we will affirm.

I

The background facts are largely undisputed. Over the course of several days in March 2017, Chip exchanged hundreds of messages with "Henry Gia"—supposedly a 14-year-old boy, but actually an undercover agent with the Pennsylvania Attorney General's Office. The conversation started on Jack'd, "an app where men meet to have quick sexual contact with each other." 2 J.A. 43.

Under an anonymous username, Chip initiated contact with Henry. Early in the conversation, Henry asked Chip how old he was. Chip reported that he was 26 years old. Henry revealed that even though his Jack'd profile listed his age as 18, he was really only

14. Despite this revelation, Chip continued messaging with Henry—first on the Jack'd app, and later on Kik, another messaging app that anonymizes user information.

Chip and Henry quickly started discussing sex. Henry revealed that he was sexually inexperienced, while Chip recounted his more substantial sexual history. The two made plans to meet over the coming days. Chip advised Henry—often, in graphic detail—on what to expect in the upcoming encounter. Less than a week after the first messages were sent, Chip drove about 20 minutes to a Rite Aid to meet Henry for a sexual encounter. Law-enforcement agents arrested Chip at the scene.

Federal prosecutors charged Chip with a single count of enticing a minor to engage in sexual activity in violation of 18 U.S.C. § 2422(b), as the statute criminalizes illegal sexual activity and Chip's conduct was illegal under Pennsylvania law. At trial, the transcript of the messages between Henry and Chip formed the central evidence against Chip. After hearing that evidence, a jury found Chip guilty and the District Court sentenced Chip to the statutory minimum of ten years in prison. On appeal, Chip argues that the evidence was insufficient to support the enticement conviction.[1]

II

"We apply a deferential standard in determining whether a jury's verdict rests on sufficient evidence." *United States v. Ozcelik*, 527 F.3d 88, 93 (3d Cir. 2008). We have stated that "[t]he burden on a defendant who raises a challenge to the sufficiency of the

---

[1] Chip was charged with violating federal criminal law, so the District Court had jurisdiction under 18 U.S.C. § 3231. This appeal is from a final decision of the District Court, so we have jurisdiction under 28 U.S.C. § 1291.

evidence is extremely high," *United States v. Iglesias*, 535 F.3d 150, 155 (3d Cir. 2008) (internal quotation marks and citation omitted), and "a decision to reverse a conviction on grounds of insufficiency should be confined to cases where the prosecution's failure is clear," *Government of the Virgin Islands v. Brathwaite*, 782 F.2d 399, 404 (3d Cir. 1986). We review the evidence in the light most favorable to the government, and will uphold the verdict if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Ozcelik*, 527 F.3d at 93 (quoting *United States v. Voigt*, 89 F.3d 1050, 1080 (3d Cir. 1996)).

III

It is a federal crime if someone "knowingly persuades, induces, entices, or coerces" a minor to engage in criminal sexual activity, "or attempts to do so." 18 U.S.C. § 2422(b). While "§ 2422(b) does not define the terms 'persuade,' 'induce,' 'entice' and 'coerce,' they 'have a plain and ordinary meaning that does not need further technical explanation.'" *United States v. Tykarsky*, 446 F.3d 458, 473 (3d Cir. 2006) (quoting *United States v. Dhingra*, 371 F.3d 557, 562 (9th Cir. 2004)). Three of the terms— "persuade," "induce," and "entice"—are "effectively synonymous, conveying the idea of one person leading or moving another by persuasion or influence, as to some action [or] state of mind." *United States v. Clarke*, 842 F.3d 288, 296 (4th Cir. 2016) (alteration in original) (internal quotation marks and citation omitted).

Chip argues that he did not violate this statute because enticement is impossible on these facts. He admits that he messaged with Henry and planned to have sex with him. Chip freely concedes that this conduct was inappropriate and potentially violated state

4

law and other federal statutes. Chip maintains, however, that his conduct does not violate the enticement statute because Henry demonstrated an "unwavering" interest in a sexual encounter, and thus the evidence does not show an attempt by Chip to persuade, induce, entice, or coerce a minor to engage in sexual activity. Appellant's Br. at 18. Based on the messages, Chip rightly characterizes Henry as an interested participant. But § 2422(b) focuses on *Chip's* conduct, and Chip attempted to persuade Henry to meet for a sexual liaison. Specifically, Chip urged Henry to meet in person, reassured Henry that he had nothing to fear from what would be his first sexual experience, and made the prospect of a sexual liaison more attractive to an apparently hesitant Henry.

From the outset, Chip pushed Henry to meet in person. Chip first broached the subject, asking Henry if he had "any plans today?" 2 J.A. 253. Chip disclosed that he lacked plans, and was "looking to make friends and hang out." 2 J.A. 254. Chip asked Henry what he was "looking for" on the app. 2 J.A. 260. A seasoned Jack'd user, Chip suggested that an in-person meeting was the "next part" that follows chatting on the app and explained the typical protocol for such a meeting. 2 J.A. 272. Later in the conversation, Chip again volunteered that he "[k]inda want to hang out" and pressed the subject. 2 J.A. 275. When Henry had to postpone the initial scheduled meeting, Chip pivoted and asked Henry about his weekend availability. Overall, while Henry indicated a willingness to meet, Chip consistently returned to the practical logistics of obtaining the meeting.

Chip also reassured the inexperienced Henry that he had nothing to fear from a meeting once one was scheduled. When Henry asked if it was "bad" that he lacked sexual

5

experience, Chip assured him "that's ok." 2 J.A. 252. When Henry similarly asked if it was "bad" that he watched gay pornography, Chip encouragingly advised: "You're still learning it's normal." 2 J.A. 256. When Henry asked if anal sex hurt, Chip assured him that "[i]t feels good when you get use to it." 2 J.A. 258. More explicitly, when Henry asked how to make sure it did not hurt, Chip explained "You can use lube … [i]t's gonna help slide the cock in." 2 J.A. 296, 298. When Henry said that he did not have lube, Chip said he would bring it to their meeting (and he did). In discussing these topics, Chip told Henry "[y]ou can be honest with me." 2 J.A. 264. Such reassurances provide ample evidence of persuasion.

Chip portrays these reassurances differently, arguing that they came in response to Henry's questions. But Chip's soft-sell approach made strategic sense in the context of the exchange. Henry made clear that he was concerned about meeting a "creeper" on the app. 2 J.A. 268–69. Henry confided that he "would be scared" about meeting a bad guy. 2 J.A. 269–70. And he revealed he would "be nervous" if he met someone from the app in person. 2 J.A. 271. Given Henry's reservations, Chip had to allay Henry's fears for a meeting to occur—and he did. Chip assured Henry that there was no need to be apprehensive. After Henry described himself as "shy," Chip agreeably characterized both of them as shy. 2 J.A. 324, 329. Assuaging a minor's fears, like Chip did here, may show enticement. *See United States v. Farley*, 607 F.3d 1294, 1306 (11th Cir. 2010) (noting defendant sent purported minor "an email reassuring her" that sex would not be painful).

Beyond these general reassurances, Chip specifically portrayed sex as enjoyable and enticing to the inexperienced Henry. When Henry asked about doing "top n bottom

6

stuff" at the planned meeting, Chip suggested that Henry watch pornography but instructed him not to masturbate because "you will need to be in the mood later and you can't spoil that." 2 J.A. 289–92. Chip's messages sometimes appeared to make Henry feel as though he were somehow missing out. For instance, when Henry said he had not received oral sex, Chip sympathized, "Awe poor Henry." 2 J.A. 359. "[P]romising [a] minor that sex would be pleasurable," among other things, will support a conviction under § 2422(b). *United States v. Dye*, No. 09-3410, 2010 WL 4146187, at *3 (3d Cir. Oct. 22, 2010).

When Henry inquired what he should expect from their planned encounter, Chip responded in graphic detail, intending to pique Henry's interest: "I'd like to do you from the back while you're leaning on the counter and sit you up on the counter when I make out with you while fucking you. Lastly, you can ride my cock until you cum over my chest." 2 J.A. 342. And when Henry broached sexual subjects, Chip escalated them. For instance, when Henry asked Chip to define the terms "top" and "bottom," Chip asked: "Do you watch gay porn?" 2 J.A. 256. Chip continued: "When you watch gay porn which turns you on the most. When the guy is fucking the other guy ass or when the other guy is being fucked?" 2 J.A. 257. These explicit messages can be construed as making the prospect of sex more alluring and enticing.

Indeed, Chip's graphic encouragement of Henry's sexual interest mirrors the behavior of defendants in other cases in which courts have found enticement. *See, e.g.*, *Tykarsky*, 446 F.3d at 461–62 (affirming enticement conviction because defendant sent purported minor detailed and explicit descriptions of planned sexual acts and appeared at

the agreed-upon location to engage in them); *see also United States v. Rounds*, 749 F.3d 326, 333 (5th Cir. 2014) ("Evidence can establish that a defendant intended to induce, persuade, entice, or coerce a minor by sending the minor sexually explicit messages."); *United States v. Goetzke*, 494 F.3d 1231, 1237 (9th Cir. 2007) ("[W]hen a defendant initiates conversation with a minor, describes the sexual acts that he would like to perform on the minor, and proposes a rendezvous to perform those acts, he has crossed the line toward persuading, inducing, enticing, or coercing a minor to engage in unlawful sexual activity.").[2]

Whatever the details of these messages, Chip's larger point is that they show Henry's interest in sex, making enticement effectively impossible. Summarizing a handful of decisions involving § 2422(b), Chip asserts that "[o]ther courts, while not stating the test in as many words, have upheld convictions only upon confirming the defendant sought to engage a minor in sexual activity the minor was not already pursuing independently." Appellant's Br. at 23–24. Chip over-reads these cases. While overcoming a minor's unwillingness to engage in sexual activity can certainly support an

---

[2] *See also United States v. Brand*, 467 F.3d 179, 203–04 (2d Cir. 2006) (holding that "statements regarding the sex acts that [defendant] planned to perform on" minor were evidence of enticement, even if undercover agent posing as minor first mentioned the word "sex," and the "sexually explicit conversations … provided overwhelming evidence to support the jury's finding that [defendant] attempted to entice a minor"); *United States v. Patten*, 397 F.3d 1100, 1102–03 (8th Cir. 2005) (holding that inquiring into minor's sexual preferences and whether she would like to "hook up" constitutes sufficient evidence under § 2422(b)); *United States v. Munro*, 394 F.3d 865, 869 (10th Cir. 2005) (holding that defendant's "statements and questions regarding virginity, sexual experiences, and his desire to perform oral sex" constitute sufficient evidence under § 2422(b)).

enticement conviction, so can less stark instances of inducement. In fact, some language in those cases directly contradicts Chip's argument. *See, e.g.*, *United States v. Kaye*, 451 F. Supp. 2d 775, 784 (E.D. Va. 2006) ("No degree of interest, curiosity, or mutual enticement from a thirteen-year-old is enough to find that Defendant's aggressive language and actions are not an attempt to persuade, induce, and entice the individual to engage in sexual activity."). A fairer reading of those cases—themselves just a smattering of decisions involving § 2422(b)—is that while it may be easier to show persuasion when a defendant badgers an unwilling minor into eventually acquiescing to sexual activity, enticing an already-curious minor to do so is also prohibited. It was not necessary to prove that Chip initially kindled a desire for sex in an otherwise-disinterested Henry; it was sufficient to prove that Chip knowingly persuaded (or attempted to persuade) Henry to engage in sexual activity.

In fact, several decisions have expressly or impliedly rejected Chip's argument. *See, e.g.*, *Dye*, 2010 WL 4146187, at \*2–3 (determining that jurors had good reason to reject a "'hot to trot' defense" that argued that undercover agent's "role playing made it clear from the outset that he was ready to go," thus making enticement impossible); *United States v. Lundy*, 676 F.3d 444, 449 (5th Cir. 2012) (rejecting argument "that because [the fictitious minor] was willing, there was no enticement, inducement, or persuasion involved"); *Dhingra*, 371 F.3d at 567 ("The victim's willingness to engage in sexual activity is irrelevant, in much the same way that a minor's consent to sexual activity does not mitigate the offense of statutory rape or child molestation."); *United States v. Myers*, 575 F.3d 801, 809 (8th Cir. 2009) ("That [the minor] acted as though

9

they were ready and willing to engage in various sex acts does not vitiate [defendant's] attempted enticement.").

Even were we to accept Chip's standard—holding enticement impossible when a minor independently shows interest in sexual activity—Henry's occasional hesitation means that Chip would fail his own test. Chip describes Henry's interest in a sexual encounter as unwavering, but the record paints a more complicated picture.[3] While Henry exhibited curiosity about sex, he also expressed concern about meeting a "creeper," feared that anal sex could be painful, and threatened to break off communications at certain points. *See, e.g.*, 2 J.A. 368–69 (stating, in response to Chip's frustration over Henry's refusal to provide his home address, "I don't get u. Bye."). This does not qualify as unwavering interest; rather, it shows that Chip had to continue pursuing Henry to induce him to go forward with the planned encounter.

In sum, Chip's conviction stands if a rational juror could have found him guilty under § 2422(b), and the messages at issue provide a basis for the jury's guilty verdict. Chip's argument to the contrary is undercut by both the record and other decisions upholding § 2422(b) convictions on similar facts.

IV

For these reasons, we will affirm the District Court's judgment.

---

[3] *See, e.g.*, Appellant's Br. at 18 ("[A] person must do more than take advantage of an underage minor's expressed and unwavering intention to engage in sexual activity."); *id.* at 19 ("[I]t is not a violation of the statute to engage in sexual activity with a minor who wished from the outset to participate and never wavered in that intention."); *id.* at 20 ("At no point did Henry hesitate in that pursuit [of a sexual encounter].").