FILED

**NOT FOR PUBLICATION**

NOV 27 2012

UNITED STATES COURT OF APPEALS

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff - Appellee, | No. 11-50222 |
| v. | D.C. No. 2:09-cr-00609-GAF-34 |
| ORLEE LUMIGUID, | |
| Defendant - Appellant. | |
| _____ | |
| UNITED STATES OF AMERICA, | No. 11-50231 |
| Plaintiff - Appellee, | D.C. No. 2:09-cr-00609-GAF-25 |
| v. | |
| MA SOCORRO NARCISO, | MEMORANDUM[*] |
| Defendant - Appellant. | |

Appeals from the United States District Court
for the Central District of California
Gary A. Feess, District Judge, Presiding

Argued and Submitted October 9, 2012

---

[*]This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

1

Pasadena, California

Before: EBEL,[**] FERNANDEZ, and BERZON, Circuit Judges.

In these direct criminal appeals, Co-Defendants Orlee Lumiguid and Ma Socorro Narciso appeal their convictions stemming from a scheme to defraud Medi-Cal, the federally- and state-funded program providing medical care to the indigent, elderly, and disabled in California. Lumiguid also challenges his sentence. Having jurisdiction under 28 U.S.C. §1291 and 18 U.S.C. §3742(a), we affirm Defendants' convictions and Lumiguid's sentence.

## I. Background

The scheme to defraud Medi-Cal involved several related companies, including MedCare Plus Home Health Providers ("MedCare"), which contracted with Medi-Cal to provide its recipients with medical services, and Excel Plus Home Health Service ("Excel"), which provided caregivers for MedCare. The individuals running these companies would hire unlicensed caregivers to provide in-home licensed nursing services to Medi-Cal recipients, pay the unlicensed caregivers between $12 and $15 an hour, and then obtain reimbursement from Medi-Cal at the $29-an-hour rate for licensed nursing services. Those operating MedCare and Excel carried out this scheme by instructing their unlicensed

[**]The Honorable David M. Ebel, Senior Circuit Judge for the Tenth Circuit, sitting by designation.

caregivers to complete the paperwork documenting the caregivers' home nursing visits, but to leave those documents unsigned. The signature of a licensed nurse was later forged on those documents. Narciso and her husband Lumiguid were unlicensed caregivers who worked for Excel and MedCare.

## II. United States v. Narciso, Appeal No. 11-50231

A jury convicted Narciso of three offenses: conspiring to and committing health care fraud, and aggravated identity theft. Narciso challenges those convictions, raising five grounds for reversal.

1. The district court did not abuse its discretion, see United States v. Santini, 656 F.3d 1075, 1077 (9th Cir. 2011) (per curiam), in refusing to take judicial notice of, and to instruct the jury on, three California statutes addressing nursing licensure, because those statutes were not relevant to the issues the jury had to decide in this case. See Fed. R. Evid. 401-403.

2. There was sufficient evidence presented at trial to support Narciso's conviction for health care fraud. We review that issue de novo, see United States v. Duenas, 691 F.3d 1070, 1079 (9th Cir. 2012), first construing the evidence in the light most favorable to the government, and then deciding whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, see United States v. H.B., 695 F.3d 931, 935 (9th Cir. 2012).

3

The jury convicted Narciso for providing the unlicensed care for which MedCare submitted a false claim to Medi-Cal on February 22, 2007, in the amount of $235.28. Narciso argues that the Government failed to prove that, in providing this unlicensed care, Narciso knowingly and willfully executed a scheme to defraud Medi-Cal. But there was evidence that Narciso knew the details of the MedCare/Excel scheme after working in Excel's office for several months in 2006. Thereafter, Narciso continued to work for MedCare and Excel as an in-home caregiver, under conditions consistent with the fraudulent scheme. She used an assumed name, provided services that she knew required a nursing license even though she did not have a license, and completed nursing notes and route sheets by either leaving the signature line blank or forging the name of a licensed nurse. And, when law enforcement officials interviewed Narciso, she told the agents that she knew "we did wrong." This evidence was sufficient for the jury to find that Narciso knowingly and willfully executed a scheme to defraud medi-Cal. See United States v. Dearing, 504 F.3d 897, 901-02 (9th Cir. 2007).

This evidence was also sufficient to support Narciso's health care fraud conviction on the Government's alternate theory, that Narciso aided and abetted the scheme to defraud Medi-Cal by knowingly and willfully providing the nursing services and documentation that MedCare used to file the charged false claim with

4

Medi-Cal. See id. at 901 ("To prove that the defendant acted as an aider and abetter, the government must show that the defendant knowingly provided substantial assistance to another's violation.").

3. The same evidence was sufficient also to support Narciso's conviction for conspiring to commit health care fraud. Specifically, that evidence supported the jury's finding that there was an agreement between two or more people to commit health care fraud; Narciso knew of that agreement; and she "joined and participated in the conspiracy with the knowledge of, and intent to further, its unlawful objective," United States v. Wyatt, 561 F.3d 49, 54 (1st Cir. 2009). See also United States v. Grant, 683 F.3d 639, 643 (5th Cir. 2012); United States v. Delgado, 668 F.3d 219, 226 (5th Cir. 2012).

4. Because there was sufficient evidence to support the predicate felonies–health care fraud and conspiracy to commit health care fraud–and because Narciso committed the charged aggravated identity theft in connection with those predicate felonies, we also affirm Narciso's conviction for aggravated identity theft.

5. The district court did not abuse its discretion, see United States v. George, 420 F.3d 991, 1000 (9th Cir. 2005), in refusing to grant Narciso a new trial based on a declaration she obtained after trial from Excel's biller, Fe Medina.

5

Narciso is unable to show that she would probably be acquitted at a new trial at which the information in Medina's declaration–that Medina did not interact with Narciso and that Narciso never had access to Medina's billing–would be presented. See United States v. Berry, 624 F.3d 1031, 1042 (9th Cir. 2010).

**AFFIRMED.**

### III.  United States v. Lumiguid, No. 11-50222

A jury convicted Lumiguid of two offenses: conspiring to commit, and committing, health care fraud.  Limiguid raises four grounds for relief from these convictions and the sentence of one year and one day in prison that the district court imposed.

1.  The district court did not abuse its discretion, see United States v. Sepulveda-Barraza, 645 F.3d 1066, 1070 (9th Cir. 2011), in admitting evidence that Limiguid was married to, and lived with, his co-defendant Narciso.  This evidence was part of the res gestae, the events explaining the conduct underlying the charged offenses, see United States v. DeGeorge, 380 F.3d 1203, 1220 (9th Cir. 2004), and was also probative of Lumiguid's guilt.  Further, any undue prejudice or confusion stemming from evidence of Limiguid's relationship with Narciso did not outweigh its relevance.

2.  There was sufficient evidence to support Limiguid's conviction for

6

committing health care fraud. The jury convicted Limiguid of providing the unlicensed nursing care underlying a false claim MedCare submitted to Medi-Cal in August 2007 in the amount of $470.56. There was sufficient evidence that, in doing so, Limiguid knowingly and willfully executed a scheme to defraud Medi-Cal. The evidence indicated that Lumiguid knew about the fraudulent MedCare/Excel scheme because he was able to discuss the details of that scheme with his co-workers and investigating law enforcement officials. With this knowledge, Limiguid provided nursing care consistent with the fraudulent scheme. For instance, Limiguid provided care using an assumed name, misrepresented that he had a nursing license, and left his nursing notes and route sheets unsigned. After federal law enforcement raided Excel's offices, Limiguid agreed that Excel could pay Limiguid's wages to a licensed vocational nurse, Icylon Guce, who would then cash the paycheck, take a percentage of it and give the rest to Lumiguid in cash. Further, when discussing the details of the scheme with a co-worker, Lumiguid and the co-worker agreed that what they were doing was not right. This evidence was sufficient for a reasonable jury to find that Limiguid knowingly and willfully executed a scheme to defraud Medi-Cal. See Dearing, 504 F.3d at 901-02. It was also sufficient to support Limiguid's conviction on the Government's alternate theory, that he aided and abetted the scheme to defraud Medi-Cal by

7

knowingly and willfully providing the nursing services and documentation that MedCare used to file the charged false claim with Medi-Cal. See id. at 901

3. There was sufficient evidence to support Limiguid's conviction for conspiring to commit health care fraud. The same evidence, discussed above, was sufficient for a reasonable jury to find that there was an agreement between two or more people to commit health care fraud; Limiguid knew of that agreement; and he "joined and participated in the conspiracy with the knowledge of, and intent to further, its unlawful objective," Wyatt, 561 F.3d at 54. See also Grant, 683 F.3d at 643; Delgado, 668 F.3d at 226.

4. Although the presentence report calculated Lumiguid's advisory sentencing guideline range to be 21 to 27 months in prison, the district court departed downward from that range and instead imposed a sentence of twelve months and one day in prison. On appeal, Lumiguid argues that the district court should have sentenced him, instead, to probation. The district court, however, in imposing sentence, committed no procedural error. See United States v. Vasquez-Cruz, 692 F.3d 1001, 1004 (9th Cir. 2012). Nor was the sentence substantively unreasonable. See id.

**AFFIRMED.**

8