# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
October 6, 2020

Lyle W. Cayce
Clerk

No. 19-11143

United States of America,

*Plaintiff—Appellee*,

*versus*

Gary Glenn Peterson,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 1:19-CR-20-1

Before Higginbotham, Jones, and Higginson, *Circuit Judges*.*
Stephen A. Higginson, *Circuit Judge*:

Gary Glenn Peterson was convicted by a jury of attempted enticement of a minor to engage in illegal sexual activity under 18 U.S.C. § 2422(b) and sentenced to 240 months' incarceration. Peterson appeals his conviction and sentence on three grounds. First, he argues there was insufficient evidence to prove the enticement element of § 2422(b). Second, Peterson argues that the district court erred when it declined to give his requested jury instruction

---

* Judge Jones does not join *infra* note 2.

No. 19-11143

on the definition of enticement.  Finally, Peterson challenges the procedural reasonableness of his sentence on two grounds: he argues that the district court erred when it failed to adequately consider a departure under U.S.S.G. § 4A1.3 prior to imposing an upward variance based on criminal history, and that it also erred by considering clearly erroneous facts at sentencing.  We AFFIRM.

## I.

On March 5, 2015, Peterson responded to an online advertisement in the personals section of Craigslist posted by Investigator John Graham of the Taylor County, Texas, Sheriff's Office, who was posing as a 19-year-old woman named "Nikki."

Over the course of the next five days, "Nikki" and Peterson's conversation proceeded from e-mails to text messages.  Peterson sent "Nikki" photographs of himself, and Investigator Graham as "Nikki" sent Peterson two images: a darkened picture of the body of a 25-year-old woman and a picture of a woman that had been age-regressed to look like a 13-year-old girl.  During their text conversations, "Nikki" implied several times that she was not 18 years old, and she ultimately told Peterson that she was 13 years old.  Despite learning that "Nikki" was 13 years old, Peterson continued the text conversation.  They discussed her sexual experiences, potential meetings, and prospective sexual encounters.  At one point, Peterson suggested he would purchase "Nikki" a cell phone if she met with him in person so she could send him sexual videos and photos.

On March 18, 2015, "Nikki" told Peterson to meet her at a local park.  Peterson arrived at the meet-up location with an empty condom box, erectile dysfunction medication, and a Victoria's Secret bag containing two pink pajama sets in size Petite Small and a receipt showing he had purchased the items that morning at the local mall.  Peterson was arrested upon his arrival.

In February 2019, Peterson was indicted on a single count of attempted enticement of a child in violation of 18 U.S.C. § 2422(b) and, after trial, a jury convicted him. The district court sentenced Peterson to 240 months' incarceration followed by a life term of supervised release. Peterson timely appealed.

## II.

Peterson's first argument on appeal is that the evidence at trial was insufficient to support his conviction of attempted enticement of a minor under 18 U.S.C. § 2422(b).

To support a conviction under 18 U.S.C. § 2422(b), the Government must prove that Peterson (1) "used a facility of interstate commerce to commit the offense," (2) "was aware that [the victim] was younger than eighteen," (3) "could have been charged with a criminal offense" by "engaging in sexual activity with [the victim]," and (4) "knowingly persuaded, induced, enticed, or coerced [the victim] to engage in criminal sexual activity." *United States v. Rounds*, 749 F.3d 326, 333 (5th Cir. 2014). To prove attempted coercion or enticement of a minor, "the Government must establish beyond a reasonable doubt that the defendant (1) acted with the culpability required to commit the underlying substantive offense, and (2) took a substantial step toward its commission." *United States v. Broussard*, 669 F.3d 537, 547 (5th Cir. 2012) (quoting *United States v. Barlow*, 568 F.3d 215, 219 (5th Cir. 2009)).

Peterson preserved the sufficiency issue when he moved for judgment of acquittal under Federal Rule of Criminal Procedure 29 at the close of the Government's case, which was also the close of all evidence. *United States v. Jaras*, 86 F.3d 383, 388 n.5 (5th Cir. 1996). We therefore review *de novo* whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Romans*, 823 F.3d

299, 311 (5th Cir. 2016) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). We review the evidence, both direct and circumstantial, as well as any reasonable inferences drawn from the evidence, in "a light most favorable to the verdict." *United States v. Rose*, 587 F.3d 695, 702 (5th Cir. 2009) (per curiam) (quoting *United States v. Harris*, 420 F.3d 467, 470 (5th Cir. 2005)).

Peterson challenges the sufficiency of the evidence only as to the fourth element of § 2422(b). Citing case law from other circuits, Peterson argues that the element of persuasion, inducement, or enticement requires a showing that he made an effort to "alter" or "affect" the minor's mental state, and that it is insufficient to show that he simply arranged, asked for, or made sexual activity "more appealing."

"Whether there was inducement, persuasion, or enticement is a question of fact for the jury to decide. All this court must decide is whether or not enough evidence was presented for a reasonable jury to come to the conclusion that there was some form of inducement." *United States v. Lundy*, 676 F.3d 444, 450 (5th Cir. 2012). Sending sexually explicit messages is probative evidence of intent to induce, persuade, entice, or coerce a minor to engage in illegal sex. *United States v. Howard*, 766 F.3d 414, 425 (5th Cir. 2014); *Rounds*, 749 F.3d at 333.

This court has also rejected arguments similar to Peterson's argument that the Government must show that the minor was unwilling until the defendant's actions persuaded the minor to engage in sexual activity. For example, in *United States v. Lundy*, the defendant argued that the Government had failed to prove persuasion because the minor was "willing." *Lundy*, 676 F.3d at 449. This court rejected the defendant's argument in light of the evidence that he had "made contact with and engaged in a string of sexually laced text message and phone conversations with a girl he thought

No. 19-11143

to be 15 year[s] old" and, after conversations over the course of a week, "agreed to meet" at a restaurant and "then travel to her house to have sex." *Id.* at 447, 450.

Similarly, in *United States v. White*,[1] the defendant also argued that the Government had failed to prove inducement.  636 F. App'x 890, 892 (5th Cir. 2016) (unpublished opinion).  This court again rejected the defendant's argument in light of the evidence that he had "responded to a Craigslist advertisement posted by law enforcement agents," "communicated with agents posing as a 13-year-old girl," "suggested sex more than once during [a] text conversation" even "[a]fter learning [the victim's] age and viewing an age regressed photograph of an undercover officer," "suggested meeting," and "appeared at the arranged location and brought condoms with him."  *Id.* at 893.

Peterson engaged in conduct similar to the defendants' conduct in *Lundy* and *White*.  He responded to a Craigslist advertisement posted by a law enforcement agent, exchanged sexually explicit text messages for two weeks with the law enforcement agent posing as a minor female named "Nikki," continued these explicit text conversations even after "Nikki" told Peterson she was a 13-year-old girl and sent him a photo of a woman that had been age-regressed to look like a 13-year-old girl, suggested he would purchase "Nikki" a cell phone if she met with him in person so she could send him sexual videos and photos, agreed to meet "Nikki" at a public park to have sex, and arrived at the meet-up location with an empty condom box, erectile dysfunction medication, and a Victoria's Secret bag containing two pink pajama sets in size Petite Small and a receipt showing he had purchased

---

[1] Unpublished opinions issued in or after 1996 "are not precedent" except in limited circumstances, 5th CIR. R. 47.5.4, but they "may be persuasive authority," *Ballard v. Burton*, 444 F.3d 391, 401 n.7 (5th Cir. 2006).

No. 19-11143

the items that morning at a local mall.  Given this evidence, we conclude that a rational trier of fact could have found that Peterson knowingly attempted to induce or entice a minor to engage in sexual activity.

## III.

Peterson's second argument on appeal is that the district court erred when it rejected his proposed jury instruction clarifying the definition of "enticement."

We review a district court's refusal to give a requested jury instruction for abuse of discretion.  *United States v. Bennett*, 874 F.3d 236, 242 (5th Cir. 2017).  A district court errs in rejecting a requested jury instruction if the instruction "(1) is substantively correct;[2] (2) is not substantially covered in

---

[2] Several arteries of instructional error caselaw branch from the imperative that juries are properly instructed on the law.  The aorta is that instructions must be substantively correct.  Contributing to this requirement, courts, often with assistance of scholars, promote "pattern jury instructions," drawn and refined from statutory exegesis and settled doctrine.

Notably, however, pattern jury instructions do not themselves have the force of law except to the extent that they recite what is controlling law.  Our pattern instructions do not "presume to be a legal treatise" but rather the Committee's "attempt[] to make accurate statements of law," and they even note that certain instructions cover topics where our law is unsettled or in tension.  *See* FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS, at 0 (CRIMINAL CASES) ("[T]he Committee has attempted to make accurate statements of the law."); *id*. § 2.73A (2019) (noting "Fifth Circuit jurisprudence reveals tension regarding the degree of proof required to establish" an element described in the pattern instructions); *id*. § 2.32 (noting the pattern instruction touches on an unsettled area of Fifth Circuit law).  This is why our caselaw unerringly requires that even if an instruction is drawn from our court's studied and recommended pattern instructions, it, independently, must be confirmed to be "a correct statement of the law." *Richardson*, 676 F.3d at 507; *United States v. Turner*, 960 F.2d 461, 464 (5th Cir. 1992).

As this court recently probed in *United States v. Cessa*, a separate artery of caselaw is implicated when an instruction is given and confirmed on appeal to be a correct statement of the law, perhaps taken from our pattern instructions, yet the defendant preserved a request for "an additional instruction that is also an accurate description of the law."  856 F.3d 370, 376 (5th Cir. 2017).  When a district court declines to give that additional

the charge given to the jury; and (3) concerns an important point in the trial so that the failure to give it seriously impairs the defendant's ability to present effectively a particular defense." *Id.* at 243 (quoting *United States v. Sheridan*, 838 F.3d 671, 673 (5th Cir. 2016)).

---

instruction, it is well-settled that we assess that decision using a three-part test: failing to give a defendant's requested instruction is abuse of discretion if the proposal "(1) is substantively correct; (2) is not substantially covered in the charge given to the jury; and (3) concerns an important point in the trial so that the failure to give it seriously impairs the defendant's ability to present effectively a particular defense." *Bennett*, 874 F.3d at 243.

In *Cessa*—as in earlier cases, *e.g.*, *United States v. Sheridan*, 838 F.3d 671, 673 (5th Cir. 2016) (Higginson, J.)—our court determined that "the district court's instruction tracked this circuit's pattern jury instruction," and then proceeded to consider "only . . . whether the charge is a correct statement of the law." *Cessa*, 856 F.3d at 376 (quoting *Richardson*, 676 F.3d at 507); *see also Sheridan*, 838 F.3d at 673 ("Because the district court followed the Fifth Circuit Pattern Jury Instructions, the only issue is whether the charge is a correct statement of the law." (citing *Richardson*, 676 F.3d at 507)). In our view, these converging lines of authority do not imply that the three-part test is truncated or disappears if a district court tracks a pattern instruction. The two tests are separate, albeit often overlapping. Reciting a pattern instruction thus gives "safe harbor," *Cessa*, 856 F.3d at 377, when the pattern instruction itself is confirmed to be correct. But even if so, a defendant can still be entitled to an additional instruction if that defendant's instruction also is correct, the defendant's instruction is not substantially covered by the pattern instruction, and the omission of the defendant's instruction would seriously impair presentation of his defense.

The court in both *Sheridan* and *Cessa* probed this point with reference to *United States v. Richardson*, specifically the excerpted sentence: "Because the district court's instruction tracked this circuit's pattern jury instruction, we need only determine whether the charge is a correct statement of the law." *Richardson*, 676 F.3d at 507; *see also Cessa*, 856 F.3d at 376 (quoting *Richardson*); *Sheridan*, 838 F.3d at 673 (citing *Richardson*). However, *Richardson*, and the authority on which it relies, namely *United States v. Turner*, 960 F.2d 461 (5th Cir. 1992), only merged the two aforementioned tests because the pattern instructions were "sufficient" to "cover" the requested additional and correct one not given. *Richardson*, 676 F.3d at 507; *Turner*, 960 F.2d at 464. In other words, the pattern instruction was a "safe harbor" but only because giving it subsumed—"substantially covered"—the otherwise correct statement of law supplementally requested by the defendant.

Here, Peterson requested a jury instruction clarifying that the words "persuade," "induce," and "entice" should be given their ordinary meaning: "the idea conveyed is of one person leading or moving another by persuasion or influence, as to some action or state of mind." The district court denied Peterson's request, overruled his objection to that denial, and ultimately charged the jury with instructions that were consistent with this circuit's pattern jury instructions. FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS (CRIMINAL CASES) § 2.91 (2015).

The district court did not abuse its discretion in rejecting Peterson's requested jury instruction because it is not a "substantively correct" statement of Fifth Circuit law. *Bennett*, 874 F.3d at 243. Peterson's requested instruction focused on the state of mind of the *victim*; to convict him, the jury would have needed to find that he "lead[] or mov[ed] another by persuasion or influence." But our circuit's caselaw "focuses on the defendant's intent, not the minor's." *Rounds*, 749 F.3d at 334; *cf. United States v. Olvera*, 687 F.3d 645, 647 (5th Cir. 2012) (affirming a conviction under § 2422(b) when the defendant communicated only with a law enforcement agent posing as a minor's father and did not have any direct communication with a minor).

## IV.

Peterson's third argument on appeal is that his sentence was procedurally unsound in two ways. First, he argues that the district court erred by failing to adequately consider a departure under § 4A1.3 for underrepresentation of his criminal history before imposing an upward variance. Second, he argues that the district court erred by considering clearly erroneous facts alleged in the Presentence Report ("PSR") regarding allegedly "predatory behavior" for which he was never arrested or charged.

No. 19-11143

## A.

The parties dispute the applicable standard of review for considering the procedural reasonableness of the district court's sentence.

Typically, "[i]n considering the procedural unreasonableness of a sentence, we review the district court's interpretation and application of the Sentencing Guidelines de novo and its findings of fact for clear error." *United States v. Nguyen*, 854 F.3d 276, 280 (5th Cir. 2017). If, however, the defendant fails to preserve a claim of procedural error in the district court, plain error review applies. *United States v. Williams*, 620 F.3d 483, 493 (5th Cir. 2010).

Here, Peterson argues that he properly preserved both his claims of procedural error in the district court, so we should review the district court's interpretation and application of the Guidelines *de novo* and its findings of fact for clear error. The Government, however, argues that Peterson failed to preserve either of his procedural error claims in the district court, so plain error review applies.

To determine the applicable standard of review, we must first determine whether Peterson properly preserved each of his procedural error claims.

## B.

First, we consider whether Peterson preserved his claim that the district court erred by failing to adequately consider a departure under § 4A1.3 for underrepresentation of his criminal history before imposing an upward variance.

At sentencing, the district court announced a sentence of 240 months, which it said was "an upward variance and it is justifiable under 18 U.S.C. § 3553(a) when considering the egregious nature and the circumstances of the

offense and the history and characteristics of this Defendant." Peterson then objected:

> The Court's reasoning for the upward variance centers primarily upon his prior criminal history. The prior criminal history is addressed under the Guidelines under the Criminal History score. The Court has not taken into consideration the prior criminal action and articulated why the criminal history score that was found to be appropriate was not adequate. The Court has varied upward based on a criminal history score -- criminal history rather than factoring that into the criminal history category and, therefore, we object that the sentence is based on procedural error.

The Government argues that Peterson's objection "was insufficient to alert the court as to the true nature of the purported procedural error"— *i.e.*, that "the court was required to formally calculate an upward departure under U.S.S.G. § 4A1.3 and explain its rejection of the resulting guidelines range before it could impose a non-guidelines sentence." Citing *United States v. Nesmith*, 866 F.3d 677, 679 (5th Cir. 2017), Peterson argues that his objection in the district court and the argument on appeal "need not be identical" to preserve error, but that the objection need only have "given the district court the opportunity to address the gravamen of the argument presented on appeal." Although he did not cite the relevant Guidelines provisions in the district court that he now cites on appeal, Peterson argues that he "used similar enough language to apprise" the district court of the "essence" of his claim.

A sentencing court must follow a three-step process. U.S.S.G. § 1B1.1; *Gall v. United States*, 552 U.S. 38, 49–50 (2007). First, the court must determine the Guidelines range. U.S.S.G. § 1B1.1(a). Second, the court must determine whether any of the Guidelines' departure policy statements warrant consideration in imposing the sentence. *Id.* § 1B1.1(b). Third, the

court must consider all the factors set forth in 18 U.S.C. § 3553(a), including whether a variance is warranted. *Id.* § 1B1.1(c). One of the Guideline departures a sentencing court may consider at step two is U.S.S.G. § 4A1.3, departures based on the inadequacy of the defendant's criminal history category.

While Peterson's objection at sentencing did not cite the specific Guidelines on which his appellate argument relies, he did assert that the district court found his criminal history score "not adequate" and argued that the court committed a "procedural error" by "var[ying] upward" on that basis "rather than factoring that into the criminal history category." Because Peterson's objection suggested that the district court follow a procedure consistent with finding a departure under U.S.S.G. § 4A1.3(a)(4) using the three-step process set out in U.S.S.G. § 1B1.1, we accept that Peterson's objection was "sufficiently specific to alert the district court to the nature of the alleged error and to provide an opportunity for correction," *United States v. Wooley*, 740 F.3d 359, 367 (5th Cir. 2014), and that he thus properly preserved this claim.

## C.

Next, we consider whether Peterson preserved his claim that the district court erred by considering clearly erroneous facts alleged in the PSR regarding allegedly "predatory behavior" for which he was never arrested or charged.

No. 19-11143

At sentencing, the district court relied on two incidents in the PSR describing "predatory behavior": (1) an incident with a 16-year-old girl at a mall[3] and (2) an incident with a 32-year-old woman.[4]

Regarding the incident with the 16-year-old girl, Peterson has properly preserved his claim. "[O]nce a party raises an objection in writing, even if he subsequently fails to lodge an oral on-the-record objection the error is nevertheless preserved for appeal." *United States v. Gomez-Alvarez*, 781 F.3d 787, 791 (5th Cir. 2015) (internal quotation marks omitted) (quoting *United States v. Medina-Anicacio*, 325 F.3d 638, 642 (5th Cir. 2003)). Peterson filed a written objection to the PSR's inclusion of the paragraph detailing the incident with the 16-year-old girl, and he renewed this objection at sentencing. Thus, Peterson properly preserved this claim and we review for clear error.

Regarding the incident with the 32-year-old woman, Peterson has not properly preserved this claim because he did not make any formal objection

---

[3] As described in the PSR: "Following the defendant's arrest, agents received information that a 16-year-old female reported being harassed and followed by a man matching the defendant's description while at the Mall of Abilene on March 17, 2015. The minor contacted her mother by telephone and then notified mall security and requested an escort to her vehicle. The Abilene Police Department was also notified. Further investigation revealed that mall security had received several complaints from concerned patrons regarding the same behavior by a man matching the same description. The mother of the minor advised agents that her daughter recognized the defendant when his image was shown during the news reporting his arrest."

[4] As described in the PSR: "During the defendant's term of supervised release, his supervision officer was contacted by a Taylor County Constable regarding a call received in which a 32-year-old female reported being watched at a distance and followed by the defendant in his vehicle. The Constable made contact with the defendant who was driving his vehicle in the area."

No. 19-11143

in the district court about its consideration of this paragraph in the PSR. Therefore, as Peterson concedes in his reply brief, plain error review applies.[5]

## D.

Because Peterson preserved his claim that the district court erred by failing to adequately consider a departure under § 4A1.3 for underrepresentation of his criminal history before imposing an upward variance, we review the district court's interpretation and application of the Guidelines *de novo*. *Nguyen*, 854 F.3d at 280. We conclude the district court did not err.

"This court recognizes three types of sentences: (1) a sentence within a properly calculated Guidelines range; (2) a sentence that includes an upward or downward departure as allowed by the Guidelines; and (3) a non-Guideline sentence . . . that is outside of the relevant Guidelines range." *United States v. Gutierrez*, 635 F.3d 148, 151 (5th Cir. 2011) (alteration in original) (internal quotation marks omitted) (quoting *United States v. Brantley*, 537 F.3d 347, 349 (5th Cir. 2008)). The 240-month sentence imposed by the district court was a non-Guidelines sentence.[6] The district

---

[5] Peterson raises his claim regarding the 32-year-old woman for the first time in his reply brief. In general, this court will not consider an issue raised for the first time in a reply brief. *United States v. Rodriguez*, 602 F.3d 346, 360 (5th Cir. 2010). Because, however, the Government raised this issue in its appellee's brief, and Peterson responded in his reply brief, our consideration of this claim "avoids the more unfair scenario that occurs when an appellant raises a completely new issue in its reply brief, disadvantaging the appellee, and for which the procedural bar concerning initial briefs was properly developed and utilized." *Id*. at 361 (internal quotation marks omitted) (quoting *United States v. Ramirez*, 557 F.3d 200, 203 (5th Cir. 2009)). In keeping with this exception discussed in *Rodriguez*, we exercise our discretion and consider this issue under a plain error standard of review.

[6] Because the district court imposed a non-Guidelines sentence, Peterson's reliance on *United States v. Gutierrez-Hernandez*, 581 F.3d 251 (5th Cir. 2009), is misplaced. As we discussed in *Gutierrez*, "[t]he decision in *Gutierrez–Hernandez* speaks to how a district court must apply § 4A1.3 when it chooses to depart under the Guidelines, not

No. 19-11143

court did not err by imposing a variance without first performing an upward calculation under § 4A1.3[7] because, as we have previously held, "a district court is not required to employ the methodology set forth in § 4A1.3 before imposing a non-Guidelines sentence." *Gutierrez*, 635 F.3d at 152; *see also United States v. Mejia-Huerta*, 480 F.3d 713, 723 (5th Cir. 2007).

Peterson argues that *Gutierrez* "should not be considered to have precedential value" because it "improperly" relies on our 2006 decision *United States v. Smith*, 440 F.3d 704 (5th Cir. 2006), which he argues was abrogated by the Sentencing Commission's 2010 amendment to § 1B1.1 of the Guidelines, referred to as Amendment 741. U.S. SENT'G GUIDELINES MANUAL, app. C supp., at 352–54 (U.S. SENT'G COMM'N 2010). While an amendment to a Guidelines provision can supersede our caselaw applying earlier versions of that provision, *see Stinson v. United States*, 508 U.S. 36, 44–45 (1993), we join our sister circuit in holding that Amendment 741 did not materially change § 1B1.1 and thus is not an amendment that overrules our prior case law. *See United States v. Vasquez-Cruz*, 692 F.3d 1001, 1005–08 (9th Cir. 2012), *cert. denied*, 571 U.S. 837 (2013).

In its statement of reasons for Amendment 741, the Sentencing Commission explained that its purpose in adopting the amendment was to "resolve[] the circuit conflict and adopt[] the three-step approach followed by a majority of circuits in determining the sentence to be imposed" and listed the Fifth Circuit as being among the majority of circuits already

---

whether it must consider § 4A1.3 before selecting a non-Guidelines sentence." *Gutierrez*, 635 F.3d at 153.

[7] While the district court may not have performed a formal upward calculation under § 4A1.3, we do not accept that the district court failed "to consider" § 4A1.3. The PSR specifically identified § 4A1.3 as a potential ground for departure, and the district court, after hearing argument from Peterson and the Government about this paragraph in the PSR, overruled Peterson's objection to the paragraph.

following the three-step approach the amendment was formally adopting. U.S. SENT'G GUIDELINES MANUAL, *supra*, at 354. Further, the Commission described the amendment to § 1B1.1 as a "restructur[ing]," not as a material amendment to the provision. *Id.*

Moreover, as explained by the Ninth Circuit, the language changes Amendment 741 made to § 1B1.1 were "relatively minor":

> First, the amendment made non-material adjustments to the instructions to district courts for determining the correct Guidelines range. Second, the amendment grouped the instructions into three subsections (subsections (a) to (c) with nested paragraphs (1) to (8)), rather than listing all instructions in order as subsections (a) to (i). Finally, the amendment added subsection (c), which, per *Booker*, requires the district court to determine the substantive reasonableness of the sentence by considering "the applicable factors in 18 U.S.C. § 3553(a) taken as a whole." The Sentencing Commission also amended the Commentary to § 1B1.1 to note that "[s]ubsections (a), (b), and (c) are structured to reflect the three-step process used in determining the particular sentence to be imposed."

*Vasquez-Cruz*, 692 F.3d at 1006 (citations and footnote omitted).

These immaterial changes do not amount to a change in this circuit's law in place before Amendment 741 and thus give us no basis for abrogating *United States v. Smith*, 440 F.3d 704 (5th Cir. 2006) and the cases that rely on it. *Accord United States v. Longoria*, 958 F.3d 372, 377 (5th Cir. 2020) ("The Sentencing Commission's amendment, however, must clearly overrule our caselaw to warrant a departure from the rule of orderliness."), *petition for cert. filed*, No. 20-5715 (U.S. Sept. 16, 2020); *United States v. Fitzhugh*, 954 F.2d 253, 254–55 (5th Cir. 1992) (holding that a Guidelines amendment overruled Fifth Circuit caselaw interpreting the commentary to

U.S.S.G. § 4B1.2 because the Sentencing Commission "made clear" that it "repudiated" controlling caselaw).

**E.**

Finally, we consider Peterson's claim that the district court erred by considering clearly erroneous facts alleged in the PSR regarding allegedly "predatory behavior" for which he was never arrested or charged.

A district court's reliance on a PSR is based on a finding of fact that the PSR's information contains indicia of reliability. *See United States v. Taylor*, 277 F.3d 721, 724 (5th Cir. 2001). As determined in *supra* section IV.C, we review the district court's consideration of the incident with the 16-year-old girl for clear error and the incident with the 32-year-old woman for plain error. Under the clear error standard, "[a] factual finding is not clearly erroneous if it is plausible in light of the record as a whole. We will find clear error only if a review of the record results in a definite and firm conviction that a mistake has been committed." *United States v. Zuniga*, 720 F.3d 587, 590 (5th Cir. 2013) (per curiam) (internal quotation marks and citation omitted) (quoting *United States v. Rodriguez*, 630 F.3d 377, 380 (5th Cir. 2011) (per curiam)). Under the plain error standard, Peterson must show a plain (clear or obvious) error that affected his substantial rights and that "the error has a serious effect on the fairness, integrity, or public reputation of judicial proceedings." *Broussard*, 669 F.3d at 546 (citing *Puckett v. United States*, 556 U.S. 129, 135 (2009)).

"When making factual findings for sentencing purposes, district courts may consider any information which bears sufficient indicia of reliability to support its probable accuracy." *United States v. Harris*, 702 F.3d 226, 230 (5th Cir. 2012) (per curiam) (internal quotation marks omitted) (quoting *United States v. Solis*, 299 F.3d 420, 455 (5th Cir. 2002)). In general, a PSR "bears sufficient indicia of reliability to be considered as evidence by

the sentencing judge in making factual determinations." *Id.* (quoting *United States v. Nava*, 624 F.3d 226, 231 (5th Cir. 2010)). When a district court finds that a factual recitation in a PSR "possesses sufficient indicia of reliability" and considers it at sentencing, "the defendant may object and offer rebuttal evidence challenging the truthfulness, accuracy, or reliability of the evidence supporting the factual recitation in the PSR." *Id.* at 231. "Mere objections" are "generally insufficient" for a defendant to discharge his burden. *Id.* at 230. A defendant must "demonstrat[e] that the information cannot be relied upon because it is materially untrue, inaccurate or unreliable." *United States v. Rodriguez*, 602 F.3d 346, 363 (5th Cir. 2010) (quoting *United States v. Angulo*, 927 F.2d 202, 205 (5th Cir. 1991)).

Here, the district court adopted the statements of fact in the PSR as final findings of fact and noted the incidents involving the 16-year-old girl and the 32-year-old woman as factors in imposing Peterson's sentence.[8]

We find that both factual recitations in the PSR contain "indicia of reliability." As to the incident with the 16-year-old girl at the mall, the factual recitation is detailed as to time (March 17, 2015, one day before Peterson's arrest), place (the Mall of Abilene, where Peterson drove on the morning of his arrest to make a purchase at Victoria's Secret), and source (the minor

---

[8] Peterson argues in his reply brief that the district court erred by considering the incident with the 16-year-old girl because the court never made a specific finding, by a preponderance of the evidence, that Peterson was the perpetrator in this incident. *See United States v. Randall*, 924 F.3d 790, 797 n.7 (5th Cir. 2019) ("[U]ncharged conduct, *if established by a preponderance of the evidence* . . . could provide a basis for a lawful non-Guidelines sentence." (emphasis added)). Because Peterson did not raise this argument in his initial brief and even arguably acknowledged in his initial brief that the district court *did* make such a finding ("[T]he Court draws a factual conclusion that law enforcement (and the PSR) would not—that Mr. Peterson was, in fact, the individual exhibiting the 'predatory behavior' at the mall."), we decline to exercise our discretion and consider this argument on appeal. *See United States v. Rodriguez*, 602 F.3d at 360.

victim's parent).  In addition, the 16-year-old victim reported the incident to mall security, requested an escort to her vehicle, and later identified Peterson as the perpetrator to the Abilene Police Department based on the photograph shown on the news following his arrest.  As to the incident with the 32-year-old woman, the victim reported being watched at a distance and followed by Peterson to law enforcement, who arrived at the scene, made contact with Peterson, and reported the incident to Peterson's probation officer.

Because this evidence bears sufficient indicia of reliability, the burden shifts to Peterson to present rebuttal evidence, which he has failed to do. *Harris*, 702 F.3d at 230–31.  In his written and oral objections to the PSR's inclusion of the incident with the 16-year-old girl, Peterson denied that he engaged in the conduct described in that paragraph, but such a "mere objection," *Harris*, 702 F.3d at 230, fails to "demonstrat[e] that the information cannot be relied upon because it is materially untrue, inaccurate or unreliable," *Rodriguez*, 602 F.3d at 363, and he presented no further rebuttal evidence at sentencing.  Likewise, Peterson made no objection—either to the PSR or at sentencing—to the inclusion of the incident with the 32-year-old woman.

## V.

For the foregoing reasons, the judgment of the district court is AFFIRMED.